May it please the Court, good morning. I must confess that since this case was filed in May of 2014, I'm sorry this is John Robert Jensen with the firm of Jensen & Jensen representing Ronald Livingston. I must admit it's nice to be in front of some judges. This case was filed in May of 2014 and we've yet to have a hearing or anything in front of a judge. We have a voluminous record as you've already seen on this appeal. This morning, Ronald Livingston presents three basic issues for the Court's consideration. First, why are we here? How do we have federal court? I'm sorry. We were going to ask you that. And I'm going to try to settle. I'm sorry? Have you people tried to settle? You keep bouncing from state court to federal court. If we send you back to state court, you'll probably come back to federal court. Would you consider a meeting with our court settlement proctor, Joe St. Amant? I hadn't really considered it, Judge. I think if you allow us to continue, you'll see that the argument I'm about to present will show you that . . . After the argument, if both sides would consult with your clients and get back to us, if we could schedule a meeting, if it would be helpful. Absolutely, Your Honor. I think it would be exemplary, actually. We have the three points. Why we're here, first of all. The second one, if we're in federal court, why can't we have a jury? And finally, why are we here on appeal when we haven't even seen an answer filed? Let me start with the first federal question, jurisdiction. I think we can all agree, anybody who's looked at the record can agree that at the time this case was filed in the 352nd Judicial District Court in Tarrant County, Texas, that it could not have been filed in federal court. It could not have been filed in federal court for two reasons. Number one, a jurisdictional prerequisite had not been met at that point in time, and that jurisdictional prerequisite is an issuance of a notice of right to sue letter from the Equal Employment Opportunities Commission. It's in order for a federal court to hear an age discrimination case under federal law, there has to be, as a prerequisite, a notice of right to sue letter issued by the EEOC. The second point is that if you review the four corners of the pleading itself, there is absolutely no question that it's merely a state court pleading. There's no federal question associated whatsoever. Even the federal judge, in his denial of the motion to remand, observed, and let me read that, that's in excerpt, or the record excerpts, page 10 of tab 4, no suggestion was made in any allegation of the state court complaint that plaintiff was complaining in a federal law was violated or that plaintiff was pursuing a claim under federal law. So I think we can all agree that at the time that this was filed, there was nothing in the federal court. So how do, how did it get to the federal court? Page 1 of the Appley's brief, he tells us exactly what he, what he intended to do. And let me read that, mid-second paragraph, third sentence. Accordingly, ag workers sought clarification through an interrogatory asking that if plaintiff was alleging, these words are important, discrimination under the Age Discrimination Act, that he described the factual basis for the claim. Well, let's see if that's what he did. Because that's a, those are legal, legal terms. Alleging a claim is a legal term. So let's look and see if that's what he did. The interrogatory, if you review the interrogatory, says, if you are discriminated or retaliated against in violation of the Age Discrimination and Employment Act, describe in a non-conclusory manner the factual basis for your contention that defendant discriminated against you because of your age. There's a big difference between the two. If you were to ask Ron Livingston back at the time this was removed, are you alleging a claim? If you were to ask Ron Livingston back at the time this was removed, under ADEA, he would say no. But if the question was, are you asserting that you were discriminated against and contending that ADEA was violated, the answer is yes. We'd just come through the administrative process where we'd done exactly that same thing. You avoid and ignore the introductory phrase about if you are asserting one. Let me address, let me address that, Your Honor. Judge the issue that you're going to see as we go through this is this is an interrogatory, and we all know what interrogatories are. We know that an interrogatory question is not admissible for any reason whatsoever unless it's a question involving yes or no answers. The interrogatory question is not the evidence. The evidence is the answer. If we look at those hostile cases like the Chapman case, for example, that the ag workers relies upon, that has to do with a claim out in controversy. As we all know the old Texas practice was, in Texas court we all had to just allege that we had a claim in excess of the minimum jurisdictional limits of the court. That doesn't tell the federal court anything as to what, whether or not there was federal court jurisdiction diversity. So you ask the question, how much are your damages? If Chapman would have said my damages were a thousand dollars, there's no federal court jurisdiction. But it's the answer, not the question. So is Livingston asserting a federal claim? Livingston was not asserting a federal claim. How is he? He doesn't want to be. He doesn't want to be in federal court. He does not want to be in federal court. He would like to go back to the original pleadings and go back to state court and do exactly what we were in state court before we ran into this mess. Which leads me to a second point once we were talking about the interrogatory and what an interrogatory is, the answers. It's interesting that at the same moment that this interrogatory question was served on Livingston by ag workers, Livingston served a request for admission on ag workers. And what was that request for admission in 7 and 8? Well, let's see. One of them was, has the EEOC issued a notice of right to sue letter? Secondly, is the EEOC issued a notice of right to sue letter? Again, we all know that the notice of right to sue letter in the EEOC is a jurisdictional prerequisite to get into federal court. It's not required for the Texas Employment Commission to issue a notice of right to sue letter to get into Texas court. All you have to do is file and then you can sue or file it with the Texas Workforce Commission and you can file your lawsuit. But that's not true in federal court. So if we're going to deal with other paper, it would seem that the first notice that they had that there was a potential federal claim there was when that request for admission was served. Now let's examine the difference between requests for admissions and interrogatories. I mentioned earlier we had not had a hearing in this case. There's no evidence to review. So how did the interrogatory ever become a basis for removing the federal court? I'm not sure. But if we looked at the request for admission, what does a request for admission do? It removes the necessity of evidence. It establishes a fact and the fact that was established by those two requests for admissions was federal jurisdictional prerequisite notice of issue of right to sue letter from the EEOC. So if there was another paper that would activate federal question jurisdiction, that's when it should have been started running. And we pointed that out in our reply. It was more than certainly more than 30 days that they removed the case after the service of that request for admission. So how are we here? It's interesting. I don't really know because the answer to the interrogatory, the entire answer, had nothing to do with federal court jurisdiction. Is it a judicial admission which the judge could consider? Judicial admission, just the mere answering of the question? I don't believe that that's appropriate because, again, what's . . . Wasn't the judge treating it that way? I'm not sure how the judge was treating it because, again, we didn't have a hearing and it seems to me that the interrogatory answer would be the If the question would have been, do you have a claim under the ADEA? Yes or no? Then the question would become relevant. What is the fork in the road between federal question and diversity? Why does that matter or if it matters, why? Oh, absolutely. The fork in the road between diversity and federal question is very big. In fact, the Eckert case which we've attached to the brief . . . For purposes of this court, this case. For purposes of this case. Well, there is no diversity here. Certainly the only . . . I understand that. The only question we have is federal question and we don't think that the diversity cases are even out . . . About Rule 1446, why does that matter whether it's diversity or a federal question for those . . . Well, diversity has been used previously to determine amount of controversy. The federal question really doesn't apply. The Eckert case, as I was about to say, clearly . . . In one of the good cases that I've read and it's not published and I understand that, but it did outline the three reasons for removing cases from state court. One of which was the diversity issue that we were just talking about. The other is federal question. Well, the federal question, as the court points out in that case, arise from the, what I call, the four corners of the pleading that the court's considering. If you look at the four corners of the pleading, even the federal judge below, Judge McBride, said, hey, there's no federal question in this pleading. But are there . . . So what . . . In the quote, other paper, depending on which you are . . . There's a lot of differences in the other paper. In fact, we don't believe that really there's that much applicability in other paper to federal question jurisdiction, as it was pointed out in the Eckert case. Well, Eckert is unpublished, as you noted. They did not point anything in 1446 itself that would make that distinction. What's your analysis that we might accept or might not as to why there should be a difference under 1446 depending on whether it's diversity or federal question dealing with another paper that is recognized at times in diversity cases? Why would it not be one for federal question? Because the answer itself, as I talked about in interrogatory, does not say anything about federal question jurisdiction. Well, you're talking about . . . And again, if I . . . Let me stop you there. You're not talking about a legal difference. You're talking about factually this doesn't comply with 1446, it seems to me, that the answer itself doesn't say anything about federal question. It doesn't say I'm relying on any federal statute. But that's a factual matter that may or may not be correct. Why would there be a legal difference in 1446 of whether there's a diversity or federal question other paper? Correct me if I'm wrong here, but it appears that the issue in federal question jurisdiction in evaluating this particular interrogatory goes back to what I said originally when we were talking about the legal terms of alleging a claim as opposed to asserting a position. There's a big difference between those two. And this interrogatory does not allege a claim as they would want you to believe on page one of their brief, Ag's brief, Ag Worker's brief, but it talks only about allegations asserting under the ADA. And as I said before, as I stand before you right now, if that question is presented, of course we allege that his age violation in violation of the ADEA. But that's not the live pleadings in the lawsuit. The live pleadings in the lawsuit only set out a state court action under Texas age discrimination law. The second amendment complaint assert a federal claim? I'm sorry? Didn't the judge just order you to re-plead or suggest you re-plead? He didn't say you had to add a federal claim, did he? That's correct, Your Honor. But again, we're between a rock and a hard place. What do we do there? Do we just ignore that issue and not assert the federal cause of action in the federal court? And a removal question, I think the issue is, was it removable at the time it was removed? All of this subsequent, for lack of a better word, occurred subsequent to the removal itself. Maybe a better word. I think you're probably right. But it all occurred subsequent. I don't believe you can cure a defect by following the court order. And again, the point in time I believe that the law applies is at the point of removal. It's kind of like the diversity cases where you have multiple parties, you go and try the lawsuit, and then the non-diverse or the diverse party settles, and all you've got is in-state. You don't then dismiss it and go back to state court all over it. If you're successful in getting remanded to state court, can you represent opposing counsel that you're not going to represent that in front of this court or any place else? At the time that it was filed, there was no question that we wanted to stay in state court. The reason for that, I'll be very candid with the court, is there's a different causation standard and we have punitive damages in state court that we can't get in federal court. It just makes sense if we're representing our client in the best interest that we stay in state court, go to that lower causation standard, and request punitive damages, which I believe were set forth in the original complaint. So we'd ask the court to reverse it, send it back, put it in the state court, and be where we're supposed to be. Thank you. May it please the court. Matt Staton for Ag Workers. So we agree with counsel that his original petition didn't allege a federal complaint. That's a flip-flop from what he told the judge at ROA 55 when he was trying to make an untimeliness argument. But be that as it may, we agree with him now. You're not arguing estoppel or something? No. No, Your Honor. I think subject matter jurisdiction wouldn't allow me to do that. It is an admission on the record. So there's no apparent removal basis. But there are facts that certainly overlap with a federal claim. They haven't asserted one, but there are facts. So we submit the interrogatory. And you all know what it says. If you're asserting in violation of the ADEA, describe. And he does. And he affirmatively responds. And I would... Isn't the problem here, and it seems to be the problem here, and you can easily see it's not really a problem, no doubt, is that 1446b3 requires that the interrogatory or whatever you're using as another paper be unequivocal. The question may have been unequivocal, but the answer, it seems to me, was talking about facts. And the question, it said, I mean, explain what the discrimination based on age was without tying it in the answer to a federal statute. So I guess unequivocal nature is in the eye of the beholder, but why is that unequivocal? The question is yours. The answer is the only thing that's his. So why is that unequivocal? Yes, Your Honor. And certainly, I think that's where the rubber meets the road on this particular issue. It does say, if you are asserting, well, what do you assert? You assert claims. And we're in the context of this lawsuit, a state, at the time, a state claim. If you are asserting that you were discriminated or retaliated against in violation of the ADEA, of course, still the question, but a specific federal statute, and then describe and he does. Now, I'll put it in a different context, maybe as a hypothetical that could illuminate it a little bit. What if we had just said admit or deny that you're violating, that you're making a claim under the ADEA? His answer would have been admit. Well, we don't know that. He wasn't asked that. Well, but you see where I'm going with it. The answer is based on a question. You can't separate the two. That would be a request for admission. Correct. That has an entirely different probative value than an interrogatory. Well, but I would urge that, I agree with you, Your Honor, of course. But the proximity, I mean, we have a sworn voluntary answer to an interrogatory that says, I'm making, it affirmatively responds to the question and says, I'm making an ADEA claim. It doesn't really say that. The answer doesn't. No. I don't think that you can parse out the question that was asked from the answer. I just, I think it's fairly clear, and I hope that I'm persuading this Court, that when you ask someone if you're asserting a violation of the ADEA in context of a lawsuit. All right, the other, only other answer would have been, I am not. I am not. Asserting. Correct. So I am not answering. Correct. I, I, he answered the question with the facts similar to what his state court petition had alleged, and all he had to do was say, I'm not making that allegation. I'm not asserting a claim under the ADEA. All right, let me ask you the same question. The number of the cases like Chapman and Caterpillar were in diversity. Does that mean we, they are not precedential or instructive in a federal question case? Well, I believe that Eggert, although the outcome is different than I would want, the Eggert case explains that in several paragraphs as to why you can look to other paper to establish federal question jurisdiction. But what, what constitutes an other paper? Well, other paper. Is it different in the two? I see what you're saying. I'm sorry, I wasn't specifically answering your question. Yes. The other paper has always been held to be discovery, and I believe, I don't have the cases that have relied on Chapman since then, but I'm almost certain there have been cases from this circuit after Chapman that deal with that exact issue and say, yes, discovery can be used in the federal question. Now, I don't want to speak out of turn because I don't have the case in front of me, but I think if you look at the rationale, it's very clear that a discovery response can be used in federal question jurisdiction. To also respond to a little bit of a follow-up to the previous line of questioning, you have the interrogatory and you have the answer, but what else do you have? You also have the plaintiff judicially admitting that he intended to assert a federal claim to a federal judge in a pleading. That's his judicial admission. It occurred shortly after he answered the interrogatory, and then, as you asked him, he amended his complaint, voluntarily asserting a federal age discrimination claim after the case was removed. He wasn't compelled to do that by the order. I read the order this morning. It doesn't say that. It doesn't say you must assert a federal claim. But his reaction to the decision hadn't Judge McBride already determined that this case was properly removed, or had he? At that point, yes, I believe he had. So he was in federal court, the district judge, powerful people, and said, We are here on this ADEA matter. What do you want to do about it, plaintiff? So I'm talking about rocks and hard places. It does seem to me if he's staying in federal court, he ought to explain what this claim is. Let me correct the timing as I understand it. The timeline was the notice of removal, and then immediately after the notice of removal, and I think he represented to this court, it was a day or two later, that the judge issued an order saying replead in compliance with the federal rules. So he hadn't actually ruled on his removal motion. I'm sorry, his remand. There had been no dispute resolved by the district judge yet as to whether the case was properly removed. I'm sorry. There had not been any dispute yet resolved by the district judge as to whether the case was properly removed. Timing-wise, not yet. And then a motion for remand was filed by the plaintiff, and only then, after some briefing, did the judge deny his motion to remand in an order. So he had ordered him to replead in compliance with the federal rules. Didn't say you must assert a federal claim. I understand his argument that he was in a rock and a hard place, but he put himself there by answering an interrogatory and then admitting that he was intending to assert a federal age discrimination claim later on in his motion to remand, and also by voluntarily repleting and asserting a federal claim. Well, my concern about the answer, which, again, doesn't drive an outcome necessarily, is that it's true that he could have answered the way Judge Wiener suggested by saying I'm not making such a claim, but it is also significant, I think, that he does have an age discrimination claim that he wishes to make under State law. And he set out the facts of what happened to him without saying I am making an ADA claim. Sometimes people answer questions not asked and don't answer the questions that are asked, and we're looking at something that's unequivocal. So that's what we have before us, as you realize. Absolutely. And, you know, one of the problems with this issue is when he was asked or when he had to deal with this situation in his motion to remand, what he did is say I've always intended to assert a federal claim so that he could try to get a gotcha timeliness argument on us. And that, you know, that doesn't play in very well with the whole scenario that I never intended to make a federal claim, I want to be in State court. When you state in a pleading, in a motion for remand, that you always intended to assert a federal claim, look at my pleading on asserting age discrimination. Of course I intended a federal claim. And they didn't remove within 30 days of that. And then to stand up here now and say, well, I never intended to and I want to be in State court only. There's a bit of gotcha going on there, too. As a defense counsel, at least in this case, did you find it surprising that plaintiffs want to be in State court on certain kinds of claims? I don't find it surprising, Your Honor, in all candor. I don't find there's a lot of maybe misdirection that has occurred in this case, but there's at least a reasonable basis apparently for a plaintiff to be in State court and wanting to stay in State court. And the issue is whether he's waived that in some way, it seems to me. I don't know if it's as much waiver as affirmatively. He's somehow overridden that by actions that he has taken. Right, right. And I think he's taken a multiplicity of actions that says I want to assert a claim under the ADEA. And so we removed eight days after knowing that. It was as simple as that. If I could briefly address the right to sue letter that he asserts as a second ground. Whether or not ag workers knew about the EEOC notice of right to sue is not the standard. That's immaterial. The other paper, as you've mentioned, must make federal jurisdiction unequivocally clear and certain. And the notice of right to sue letter certainly doesn't do that for a couple of reasons. One, it says nothing more than you may sue. These are your rights. Second, and this is equally important, and it's not in the briefs, and I apologize, but in reviewing these issues, other paper has to be voluntarily submitted by the plaintiff. This is a document generated by the EEOC, and I think that's why you don't find any cases saying that a notice of right to sue letter is the trigger for another paper type argument. So that would be our ‑‑ the fact that the claim could be brought under federal law is not dispositive, and the fact that the plaintiff didn't generate this document, so he didn't voluntarily generate it and send it to us, is also dispositive as to his argument about the right to sue letter. If Your Honors don't have any further questions, that's the amount of time that I've spent on the removal, and that joins the issues that he presented. We certainly would mediate if the court ordered us to do so, as you suggested. I mean, we're always willing to talk to see if there's a way to resolve this. All right. Then we'll wait to hear if Mr. Livingston agrees. Thank you, Your Honors. All right. Thank you very much, Mr. Staton. Mr. Jensen, you have some rebuttal time. Thank you, Your Honor. May it please the Court. Taking the last one first, the request for admission certainly was a voluntary part of the plaintiff in submitting a request for admission attaching the EOC to it to establish the potential jurisdiction. As to the other, let me address it this way. A lot of times we do stuff in response that we regret later. We've all heard the saying that to rebut the absurd, be more absurd, and I've got to confess that that's kind of what we're doing here. I've had a relationship with this law firm for a long time, and I was quite frankly shocked that it was being removed. What we did is we went through and said, okay, if there's federal question jurisdiction within this four-corner document, let's go back to the very beginning. Sure, we submitted this case to the EEOC. We submitted it to the Texas Workforce Commission. They've got a working agreement between the two of them. Everything we do in one is to the other. We've mediated with them. We've done this and that. We've gone through all of the procedures. The Texas Workforce Commission issued the notice of right to sue letter. The EEOC had not at the time we filed the lawsuit, but they subsequently did. We threw out the request for admission. That doesn't mean we wanted to present the case in federal court. Again, you can read the language as being while you're kind of admitting that this is a federal issue that you want to be in federal court. At no time did we ever want to be in federal court for the reasons I outlined for Judge Southwick earlier, and that is we have a lower causation standard in state court, and you've got a right to get punitive damages, which you can't get in the EEOC type of claim in a federal question jurisdiction under ADEA. But didn't you tell Judge McBride you wanted to assert a federal claim, that you'd always intended to assert a federal claim? I never made that representation to him in person. What we did was, again, this was in the writing. Actually, it was in the reply. The additional motion to remand was just pure vanilla. It wasn't filed within 30 days. Therefore, hey, it doesn't qualify as other paper under the statute. So it was then in reply to that that the ag workers said, well, what we have here is we've got an interrogatory question that, King's X, we got you on federal question. And we said, no, no, wait a minute. We can't do that on a question. That doesn't make any sense at all. Even read the Chapman. You read all these other cases that deal with diversity. That doesn't mean you can do that on a federal question. Diversity, we understand that issue, but the other, we don't. We'd request the Court to send it back to the State Court. Thank you. All right. We have your argument.